UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERCOM VENTURES, LLC, dba Bosna TV, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 10275 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CITY MEDIA PLUS EX-YU STREAMING, a limited liability company organized in the Republic of Serbia, dba Net TV Plus, SPORT PLUS LIVE, SA, a corporation organized in the Republic of Panama, SOLFORD TRADING LIMITED, a corporation organized in the Republic of Cyprus, dba Net TV Plus, DANIEL ROKVIC, BORIVOJE STEFANOVIC, and ALEXANDRA CICA and OZREN HODZIC, dba NetTV Plus Chicago and dba Net TV Plus Chicago, Inc., | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Intercom Ventures, LLC, doing business as Bosna TV, alleges in this suit that Ozren Hodzic and the other defendants violated the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and the Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.*, by pirating and distributing Internet television programming over which Intercom has exclusive distribution rights. Doc. 5. Hodzic has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims in the amended complaint against him; in the alternative, he seeks a more definite statement under Rule 12(e). Doc. 15. The motion is granted in part and denied in part.

**Background**

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court also must consider "documents attached to the complaint,

1

documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Intercom's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Intercom as permitted by the amended complaint and the other materials that must be considered on a Rule 12(b)(6) motion. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Intercom provides Internet Protocol Television ("IPTV") to a Bosnian language subscriber base in the United States. Doc. 5 at ¶ 12. IPTV is a digital television service that distributes television programming by sending coded digital transmissions over the Internet in a form capable of translation by home devices in conjunction with standard television receivers. *Id*. at ¶ 13. Intercom owns the exclusive rights to distribute certain Bosnian language television programs in the United States and worldwide; Intercom received those rights from the programs' originators, who created, developed and produced the programming outside of the United States and first aired them either outside the United States or simultaneously outside the United States and within the United States. *Id*. at ¶ 14. The Bosnian language programming over which Intercom holds exclusive rights for distribution in the United States consists of all programming produced and distributed by these television channels: BHT, Federalna TV, Top Music, RTV Novi Pazar, OTV Valentino, HemaTV-Contract, AlfaTV, RTV Mostar-TV1, NTV IC Kakanj, RTV TK, RTV USK, Hayat TV, Hayat Plus, Hayat Music, and Hayat Folk. *Id*. at ¶ 15.

Intercom obtained those exclusive rights on or about August 8, 2011, and remains their sole owner. *Id*. at ¶ 16. From that day until the day this case was filed, January 16, 2013, and in concert with other defendants, Hodzic has pirated the signals of those channels in Europe and distributed their content via the Internet to a paying consumer subscriber base in the United

2

States without Intercom's authorization or permission. *Id*. at ¶¶ 18, 20, 25-33, 35-36, 38; Doc. 21 at 6-8. Hodzic and the other defendants had knowledge of Intercom's exclusive rights to distribute the programming. Doc. 5 at ¶ 31.

## Discussion

The amended complaint has three claims: (1) direct copyright infringement under the Copyright Act; (2) contributory copyright infringement under the Copyright Act; and (3) violation of the Communications Act. Doc. 5. Each claim is addressed in turn.

### I.     Copyright Act Claims

To bring an action under the Copyright Act, a plaintiff must allege that it is "[t]he legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b). In *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377 (7th Cir. 2011), the Seventh Circuit interpreted § 501(b) to provide that the holder of an exclusive license to distribute a particular work can sue under the Copyright Act, while the holder of a non-exclusive license may not:

> The[] rights [in 17 U.S.C. § 106] are divisible, meaning that the owner may convey each one of them to a different person. See 17 U.S.C. § 201(d)(2) … . Thus, if the exclusive right to reproduce (meaning exclusive of the grantor as well as all third parties) were transferred to A, the exclusive right to prepare derivative works were given to B, and the exclusive right to distribute copies to the public were granted to C, each transferee would be entitled to sue for infringement of its particular right. The corollary to this rule is that a person holding a non-exclusive license is not entitled to complain about any alleged infringement of the copyright.

*Id*. at 382. Inquiry under § 501(b) speaks to the merits of a copyright claim, not to Article III standing. *See id*. at 381 ("Some courts (including this one in years past) have seen [§ 501(b)] as a limitation derived from Article III's standing requirement …, but we believe that it is preferable to be more precise in our language. Many parties who have not crossed the 'T's' and dotted the 'I's' in their copyright licenses would have no trouble demonstrating injury in fact, causation, and redressability—the three indispensable requirements for constitutional standing

3

…. [The correct approach is to] say that the Copyright Act spells out who has enforceable rights under the statute; someone who does may sue, and someone who does not has failed to state a claim upon which relief may be granted.") (citation omitted).

As noted above, the amended complaint alleges that Intercom has an exclusive license to distribute the programming in question. Doc. 5 at ¶ 14. Hodzic argues that Intercom's copyright claims nonetheless fail under § 501(b) because it has not submitted to the court the licensing documents themselves, making it impossible to determine whether the licenses actually are exclusive. Doc. 15 at 16. At the pleading stage, however, Intercom need not provide evidence to supports its allegation that it has an exclusive distribution right; the allegation alone is sufficient to survive a Rule 12(b)(6) motion. *See Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) (noting that the Federal Rules of Civil Procedure do not "require a plaintiff to attach evidence to his complaint"); *Palmer Kane LLC v. Scholastic Corp.*, 2013 WL 709276, at * 3 (S.D.N.Y. Feb. 27, 2013) ("Contrary to defendants' contentions, the complaint is not required to attach copies of registration certificates or provide registration numbers for all of the copyrights at issue in order to survive a motion to dismiss."); *Navistar, Inc. v. New Balt. Garage, Inc.*, 2012 WL 4338816, at *10 (N.D. Ill. Sept. 20, 2012) (holding that the allegation that the plaintiff "owns valid copyright registrations" is sufficient to survive a motion to dismiss).

Section 106(3) of the Copyright Act provides that "the owner of copyright under this title has the exclusive rights to … distribute copies … of the copyrighted work to the public." 17 U.S.C. § 106(3). To prove direct infringement, Intercom must show: (1) that it owns a valid exclusive distribution license to the programming; and (2) that Hodzic engaged in the unauthorized distribution of copies of the copyrighted works to the public. *See Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir.

2007); *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005). To prove contributory infringement, Intercom must show that Hodzic engaged in "personal conduct that encourage[d] or assist[ed] the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) (internal quotation marks omitted).

Hodzic argues that Intercom's copyright claims do not satisfy *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), because the amended complaint lacks sufficient factual allegations regarding Hodzic's involvement in the infringement, does not mention the content allegedly infringed, and fails to specify the works to which Intercom holds the distribution rights. Doc. 15 at 6-13. Rule 8(a)(2) does not require detailed factual allegations, but it does require that a complaint allege more than labels, conclusions, or a formulaic recitation of the elements of a claim. *See Twombly*, 550 U.S. at 555. That is, a complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). Here, Intercom asserts that (1) it holds the exclusive right to distribute the entire content and programming of above-referenced television stations, and (2) Hodzic and the other defendants have, without authorization, "rebroadcast … the entire content of [these] foreign television channels over the internet [from August 8, 2011 to the present]" by "delivering all the signals at once to each subscriber …." Doc. 21 at 3-4. Although these allegations appear in Intercom's brief opposing dismissal, they are "consistent with the pleadings" and thus must be considered on a Rule 12(b)(6) motion to dismiss. *Geinosky*, 675 F.3d at 745 n.1. And given the breadth of programming at issue, that is all the specificity that Rule 8(a)(2) requires. It is enough for Intercom to allege that Hodzic infringed on all of the programming on the above-referenced television stations; there is no need to list each of the programs carried by those stations.

5

Hodzic next contends that the contributory infringement claim fails because Intercom has neither identified a third party whom Hodzic aided nor specified how Hodzic aided that third party. Doc. 15 at 13. The pertinent allegations in the amended complaint state:

> 30. Defendant[] … Ozren Hodzic, … doing business as Nettv Plus Chicago and Nettv Plus Chicago, Inc., ha[s] acted in concert with City Media Plus Ex-Yu Streaming, DOO, Solford Trading Limited, and Sport Plus Live, SA, by facilitating, managing or directing unauthorized distributions of Bosnian language television programming, to which Plaintiff holds the exclusive rights, in violation of the copyright laws, in that these Defendants have offered the programming to consumer subscribers and caused delivery of programming to the subscribers by City Media Plus Ex-Yu Streaming, DOO, Solford Trading Limited, and Sport Plus Live, SA, both independently and as an agent for Sport Plus Live, SA and Solford Trading Limited.
>
> 31. The acts of contributory infringement by each Defendant have been committed willfully and with the knowledge that its or his or her conduct aided and abetted violations of the exclusive rights of Plaintiff to distribute the programming.

Doc. 5 at ¶¶ 30-31. Although Hodzic is correct that the amended complaint does not distinguish the direct infringers from the contributory infringers, *id*. at ¶¶ 25-33, Intercom cannot be expected to know at this early stage of the litigation which of the defendants are the direct infringers and which are the contributory infringers. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) ("[A] plaintiff's pleading burden should be commensurate with the amount of information available to them. Here, [the plaintiff] pled sufficiently given the amount of information to which she had access.") (internal quotation marks and citation omitted).

Finally, Hodzic asks that Intercom's request for statutory damages and attorney fees under the Copyright Act be stricken because Intercom has not registered its licenses. Doc. 15 at 16-18. Intercom does not respond to this argument, but merely briefly states that registration is not a prerequisite to its copyright suit because the works did not originate in the United States. Doc. 21 at 5. That evades rather than answers Hodzic's argument. If a defendant provides

6

plausible grounds for granting a motion to dismiss, the court will "not … do the plaintiff's research and try to discover whether there might be something to say against the defendant['s] reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *see also Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("The federal courts will not invent legal arguments for litigants."). A plaintiff's failure to respond substantively to such grounds provides a sufficient basis for dismissal. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) ("As to the defendants' motion to dismiss the complaint, Alioto waived his right to contest the dismissal by failing to oppose the motions."); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) ("[w]hile Lekas alleged in his complaint that his segregation was in retaliation for his filing of grievances, he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss").

Hodzic has provided a plausible basis to strike any request for statutory damages and attorney fees for the copyright claims. It is true that § 411(a) of the Copyright Act provides that registration is not a prerequisite to a copyright suit for copyrighted works that did not originate in the United States. *See* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any *United States work* shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title") (emphasis added); *Golan v. Holder*, 132 S. Ct. 873, 882 n.11 (2012) (noting that § 411(a) "requir[es] registration of U.S. 'work[s],' but not foreign works, before an owner may sue for infringement"); *Rudnicki v. WPNA 1490 AM*, 580 F. Supp. 2d 690, 692 (N.D. Ill. 2008) ("Works first published outside the United States, like plaintiff's broadcasts, are exempt from the registration requirement, § 411(a)."). However, § 412 provides that a copyright plaintiff seeking statutory damages or attorney fees must complete copyright registration before infringement occurs (or, for published works, within three months

7

of first publication) regardless of the work's place of origin. *See* 17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees, … shall be made for … any infringement of copyright in an unpublished work commenced before the effective date of its registration" or "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work"). Sections 411(a) and 412 have correctly been read together to mean precisely what they say: Although registration is not a prerequisite to bringing suit over a copyrighted work originating outside the United States, it is a prerequisite to seeking statutory damages or attorney fees regardless of where the work originates. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1302-03 (11th Cir. 2012) (in a case involving an alleged foreign work, holding that "only owners of registered works may collect statutory damages and attorney's fees"); *Rudnicki,* 580 F. Supp. 2d at 694 ("The holders of copyrights for foreign works need not register those works in order to bring a suit for copyright infringement. Registration is only a prerequisite when the foreign copyright holder seeks statutory damages and attorney's fees."); *The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 164 (S.D.N.Y. 2009) ("Neither the House nor the Senate found that [§] 412, which denies statutory damages for both foreign and domestic unregistered works, violated the Berne Convention."). Accordingly, because Intercom has not alleged that the works in question have been registered, it may not seek statutory damages or attorney fees for its copyright claims.

## II.     Communications Act Claim

Intercom brings its Communications Act claim under 47 U.S.C. §§ 605(a) & (e)(4). As the Seventh Circuit put it, § 605(a) prohibits "the unauthorized interception and divulging of wire or radio communications" and "the unauthorized receipt and use of wire or radio

8

communications for the benefit of the unauthorized receiver or someone else not entitled to the communication," while § 605(e)(4) prohibits the "facilitation of the unauthorized interception of radio communications." *United States v. Norris*, 88 F.3d 462, 465, 463 (7th Cir. 1996).

Hodzic contends that this claim fails because the amended complaint does not allege that any defendant illegally intercepted a transmission, let alone a transmission belonging to Intercom. Doc. 15 at 15. The first proposition is incorrect. The amended complaint and Intercom's brief allege that Defendants pirated the radio signals of the above-referenced foreign channels in Europe. Doc. 5 at ¶¶ 35, 38; Doc. 21 at 6-7 (implying the signals were transmitted by radio by citing the portion of § 605(a) pertaining to radio communications). As for the second proposition, § 605 entitles "[a]ny person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection [e]" to bring a civil action, 17 U.S.C. § 605(e)(3)(A), and it defines "any person aggrieved" to "include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming," 17 U.S.C. § 605(d)(6). As the (alleged) exclusive licensee of the programming at issue, Intercom has propriety rights in the intercepted communication, meaning it is entitled to sue under §§ 605(a) & (e)(4). *See Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n*, 881 F.2d 983, 985-86 (11th Cir. 1989) (finding "a nonexclusive licensee with collateral rights of distribution" was a "person aggrieved" under § 605(d)(6)), *vacated due to the failure to notify the court of a settlement agreement*, 895 F.2d 711 (11th Cir. 1990); *J & J Sports Prods., Inc. v. 4326 Kurz, Ltd.*, 2009 WL 1886124, at * 9 (E.D. Pa. June 30, 2009) ("courts have found that distributors of satellite programming have proprietary rights to communications they distribute and therefore [can] sue when others injure those rights by violating § 605"); *Garden City Boxing Club, Inc. v. Hernandez*, 2008 WL 4974583, at *1, 3

(S.D.N.Y. Nov. 24, 2008) ("Garden City obtained the right to distribute the De La Hoya/Campas fight … in a live broadcast[] to establishments in New York that wished to exhibit the fight publicly to their patrons. … Because it had a proprietary interest in the intercepted communications, Garden City is a 'person aggrieved' within the meaning of 47 U.S.C. § 605(d)(6)."); *Joe Hand Promotions, Inc. v. Rennard St. Enters., Inc.*, 975 F. Supp. 746, 753 (E.D. Pa. 1997) (noting that the term "person aggrieved" was meant to include, among other things, "owners of the programming being transmitted," and holding that "the plaintiff is an aggrieved person for purposes of [§] 605, because it has a proprietary right to the distribution of the HBO broadcast") (internal quotation marks omitted).

Hodzic also contends that the amended complaint lacks sufficient specificity as to Hodzic's actions, the works allegedly pirated, when the programming was pirated and distributed, and the manner the signals were transmitted and intercepted. Doc. 15 at 15-16. That contention is without merit. Intercom has alleged that between August 8, 2011, and the day the case was filed, January 16, 2013, Doc. 5 at ¶ 20, Hodzic and the other defendants pirated the European radio signals transmitted by the above-referenced channels, *id.* at ¶¶ 35, 38 (incorporating Hodzic by reference into the pirating allegation), and distributed the content to paying subscribers by providing those subscribers with equipment to access the pirated programming via the Internet, *id.* at ¶ 36; Doc. 21 at 6-8, with knowledge of Intercom's exclusive rights and without its permission, Doc. 5 at ¶ 20, 35, 38. No further details are necessary at the pleading stage. *See Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011) ("The complaint clearly identifies the broadcast program allegedly misappropriated by Atlantic, the place of the alleged violation, the date of the alleged violation, the existence of a contract establishing Joe Hand's exclusive rights to show the broadcast

program, the absence of authorization allowing Atlantic lawfully to show the broadcast program, and the Atlantic's alleged willfulness in misappropriating the broadcast program. In addition, a reasonable inference from the statutes listed in the complaint is that the broadcast program was misappropriated by satellite or cable. Nothing more is or should be required to state a claim under … § 605.") (citations omitted). Contrary to Hodzic's submission, Doc. 15 at 15; Doc. 22 at 14-15, a complaint under § 605 need not allege the manner in which the signals were intercepted. *See J & J Sports Prods., Inc. v. Scarato*, 2008 WL 2065195, at *2 (E.D. Mo. May 14, 2008) ("[Sections 605(a) & (e)(4)] hold someone liable for pirating media or creating a device to pirate it; thus, the necessary allegation is that the Program was intercepted, not how it was intercepted."); *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, 2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012) ("[t]he complaint need not specify the precise method of interception" to plead a claim under § 605).

## Conclusion

For the foregoing reasons, the motion to dismiss is granted only to the extent it seeks to strike the prayers for statutory damages and attorney fees in Counts I and II of the amended complaint; the motion otherwise is denied. Hodzic's motion for a more definite statement is denied as well because, for the same reasons, the amended complaint is not so "vague or ambiguous that [Hodzic] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

August 6, 2013

_____
United States District Judge